UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HUDLOW,<br><br>                           Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; DEPUTY ANTHONY MEHALIK; DEPUTY CARLOS ESQUER; and DOES 1-10,<br><br>                           Defendant. | Case No.: 18cv2826-CAB-WVG<br><br>**ORDER REGARDING MOTION TO DISMISS SECOND AMENDED COMPLAINT [Doc. No. 3]** |

     This lawsuit arises out of an alleged use-of-force incident that occurred on September 21, 2016 in the City of Encinitas.  Pending before the Court is the motion to dismiss the Second Amended Complaint ("SAC") filed by Defendants County of San Diego ("County"), Deputy Carlos Esquer, and Deputy Anthony Mehalik (collectively "Defendants").  [Doc. No. 3.]

PROCEDURAL HISTORY

     On February 6, 2018, Plaintiff, who was in pro per at the time, filed his original complaint in the San Diego Superior Court, Case Number 37-2018-00006324-CU-PO-CTL, alleging only state law claims.  [Doc. No. 1 at 24-27.]  On September 10, 2018, Plaintiff filed a First Amended Complaint ("FAC"), again only alleging state law claims.

1

[Doc. No. 1 at 19-21.] On November 20, 2018, now represented by counsel, Plaintiff filed the SAC, alleging federal claims. [Doc. No. 1 at 5-17.] In the SAC, Plaintiff sets forth five claims for relief against Defendants under 42 U.S.C. §1983 for unlawful detention and arrest, excessive force, ratification, failure to train, and unconstitutional custom or policy, as well as a claim under the Americans with Disability Act ("ADA").

On December 17, 2018, Defendants filed a notice of removal. [Doc. No. 1.] On December 21, 2018, Defendants filed a motion to dismiss the SAC. [Doc. No. 3.] On January 4, 2019, Plaintiff filed an opposition to the motion to dismiss. [Doc. No. 4.] On January 18, 2019, Defendants filed a reply to the opposition. [Doc. No. 6.]

## ALLEGATIONS OF COMPLAINT

Plaintiff alleges that on September 25, 2016 at 4:00 a.m., he was walking on Encinitas Boulevard towards his residence when he noticed a vehicle on the other side of the road. [Doc. No. 1, SAC at ¶ 12.] Plaintiff alleges that deputies saw him walking and that he eventually crossed the street. [*Id.* at ¶¶ 13 – 15.] After walking another quarter of a mile, he was approached by Deputy Mehalik and Deputy Esquer and Plaintiff asked if he could assist them. [*Id.* at ¶¶ 15 – 16.] Plaintiff claims the deputies grabbed Plaintiff's hands and began asking him questions. [*Id.* at ¶¶ 16 – 17.] The deputies allegedly asked Plaintiff if they could search him, but he denied their request. [*Id.* at ¶ 17.] He alleges that he immediately told the deputies that he was disabled and could not have his hands placed behind his back. [*Id.* at ¶ 18.] The deputies asked him why he could not perform the task but, as Plaintiff attempted to demonstrate his "limitation." the deputies allegedly grabbed his hands and handcuffed him. [*Id.*] Plaintiff states he immediately began complaining of being in pain due to the fact that his hands were behind his back, but that the deputies responded by acting more forcibly and they said that "everyone claims to be disabled." [*Id.* at ¶ 19.]

Plaintiff further alleges that the deputies searched him for 45 minutes before determining he had not participated in any criminal activity and then they removed the handcuffs. [*Id.* at ¶¶ 20-21.] Plaintiff claims that when Deputy Mehalik removed the

handcuffs, he twisted Plaintiff's hands and pulled both of Plaintiff's shoulders out of the sockets which caused Plaintiff to be in pain. [*Id.* at ¶ 22.] Plaintiff alleges that he was pushed to the ground where Deputy Mehalik continued to pull on his arms. [*Id.* at ¶ 23.] He claims he asked deputies to take him to the hospital, but they declined to do so. [*Id.* at ¶ 24.] Fearful of the deputies, Plaintiff returned to his home as quickly as possible. [*Id.* at ¶ 25.]

## DISCUSSION

A. Legal Standard.

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted"—generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand . . . more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the collective facts pled "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court need not accept as true "legal conclusions" contained in the complaint, *id.*, or other "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

B. Analysis.

   1. Ratification.

With respect to ratification, a supervisor can be held liable for ratifying the unconstitutional acts of his subordinates. *See Watkins v. City of Oakland*, 145 F.3d 1087, 1093–94 (9th Cir. 1998). "Ratification" is the approval of a subordinate's decision and the basis for the subordinate's decision. *See Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), reversed on other grounds, 135 S.Ct. 1765 (2015). Ratification involves a deliberate choice to endorse the acts of subordinates. *See id*. Ratification is more than acquiescence, and a mere failure to discipline does not amount to ratification. *See id*. Here, Plaintiff makes a conclusory allegation that the "final policymaker knew of and specifically approved of (or will approve of) Defendants Mehalik and Esquer, and Doe Officers' acts." [Doc. No. 1 at 12, ¶47.][1] Such an "unadorned, the defendant-unlawfully-harmed me accusation" is insufficient. *Iqbal*, 556 U.S. at 678. In his opposition, Plaintiff argues that "a reasonable inference can be drawn that a final policymaker approved the unlawful detention, de facto arrest, and unlawful search because (on information and belief) Deputies Mehalik and Esquer have not been retrained, suspended, fired, or otherwise disciplined for their actions against Plaintiff. However, a mere failure to discipline does not amount to ratification. *Sheehan*, 743 F. 3d at 1231. Therefore, the motion to dismiss the ratification claim is **GRANTED WITH LEAVE TO AMEND** as to Defendant County.[2]

   2. *Monell* claim.

In the context of claims under 42 U.S.C. § 1983, it has long been established that plaintiffs can demonstrate a constitutional violation by showing that the policies of a

---

[1] It is not clear how Plaintiff has a good faith basis to assert the policymaker's motives, when Plaintiff does not know the identity of the policymaker. The Court assumes Plaintiff's counsel will abide by their obligations under Federal Rule of Civil Procedure Rule 11 to undertake a "reasonable inquiry" prior to reasserting this claim in an amended pleading.

[2] Plaintiff acknowledges that the statute of limitations has run as to any DOE defendants on all of the claims under 42 U.S.C. §1983. [Doc. No. 4 at 9, n. 4.]

4

municipality or government agency violated their rights. *See Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). "A 'policy' is 'a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' " *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir.2002) (*per curiam*) (*quoting Oviatt ex rel Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir.1992)). A plaintiff can prevail by pointing to both policies of "action" and of "inaction." *Id.*

Here, while Plaintiff alleges a litany of unconstitutional policies, he does not sufficiently tie any of those policies to the alleged violation in this case. Plaintiff must allege how a particular policy led to his own injury. *Castro v. Cty of Los Angeles,* 833 F.3d 1060, 1073 (9th Cir. 2016)(*en banc*)(citations omitted). Therefore, the motion to dismiss as to the *Monell* claim is GRANTED WITH LEAVE TO AMEND as to Defendant County.

3. Failure to train.

"[A]s to a municipality, 'the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). This means Plaintiff "'must demonstrate a conscious or deliberate choice on the part of a municipality in order to prevail on a failure to train claim.'" *Id.* (quoting *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008)) (internal quotation marks omitted). "Satisfying this standard requires proof that the municipality had actual or constructive notice that a particular omission in their training program will cause municipal employees to violate citizens' constitutional rights." *Kirkpatrick v. Cty. Of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016)(en banc)(internal quotation marks, alterations and citations omitted). In order "to demonstrate that the municipality was on notice of a constitutionally significant gap in its training, it is ordinarily necessary for a plaintiff to

demonstrate a pattern of similar constitutional violations by untrained employees." *Id.* (internal quotation marks omitted).

"A 'pattern of similar constitutional violations by [similarly situated] employees is ordinarily necessary to demonstrate deliberate indifference.' " *Flores v. Cnty. of Los Angeles*, 759 F.3d 1154, 1159 (9th Cir. 2014) (*quoting Connick*, 131 S. Ct. at 1360). The pattern of violations must be very specific. For example, in *Connick*, the prosecutors concealed a crime lab report in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Connick*, 131 S. Ct. at 1358. The state courts had overturned four other convictions from that prosecutor's office for *Brady* violations. *id*. at 1360. But these violations did not put the prosecutor's office on notice that its training was "deficient in a particular respect" because "[n]one of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind." *id*. Thus, *Connick* indicates that the pattern cannot consist of generic misconduct; rather, it must be a pattern of incidents that closely resemble the underlying misconduct in a particular case. *See also Flores*, 759 F.3d at 1159 (requiring "a pattern of sexual assaults perpetrated by Los Angeles Sheriff's deputies"); *Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992) (requiring a pattern of perjury by police officers).

Here, Plaintiff has failed to allege any similar constitutional violations that would put the County on notice of inadequate training. Instead, Plaintiff merely argues that the deputies "failed to conform their conduct to basic law enforcement standards" and well-trained officers would do so. [Doc. No. 4 at 5-6.] However, a failure to train claim is not about an individual officer's alleged unconstitutional conduct. Rather, the question is whether plaintiff can demonstrate a pattern of similar constitutional violations by untrained employees. *Kirkpatrick*, 843 F.3d at 794. Plaintiff has simply failed to do so. Therefore, the motion to dismiss the failure to train claim is GRANTED WITH LEAVE TO AMEND as to Defendant County.

/ / / / /

/ / / / /

4. ADA.

To state a claim under Title II of the ADA, a plaintiff generally must show:

> (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997).

With respect to an individual, "disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual … " 42 U.S.C. § 12102.

Plaintiff's SAC alleges that "[o]n the date and time herein alleged, Plaintiff HUDLOW was injured and informed Defendants of his injury and limitations." [Doc. No. 1 at 16, ¶74.] This is not sufficient to establish a disability for ADA purposes. Plaintiff has not alleged any facts that his impairment substantially limits him in a relevant major life activity. *See Selandia v. Regents of Univ. of Cal.*, No. CIVS031551LKKPANPS, 2006 WL 463127 (E.D. Cal. Feb. 24, 2006); *Kim v. Potter*, 460 F. Supp. 2d 1194 (D. Haw. Apr. 26, 2006) (plaintiff not substantially limited in his ability to walk or stand despite permanent physical impairment of walking with a limp); *see also Kelly v. Drexel Univ.*, 94 F.3d 102, 108 (3rd Cir. 1996) (degenerative joint disease of right hip causing pain, occasional limp, moderate difficulty walking and maneuvering stairs was not substantial limitation). A single and isolated incident of illness is not sufficient to establish a disability under the ADA. *Bresaz v. County of Santa Clara,* 136 F.Supp.3d 1125, 1137 (N.D. Cal. 2015). Therefore, the motion to dismiss the ADA claim is GRANTED WITH LEAVE TO AMEND.

## CONCLUSION

For the reasons set forth above, the motion to dismiss the claims for ratification, failure to train, *Monell* violation, and ADA violation, is **GRANTED WITH LEAVE TO**

**AMEND.** This will be Plaintiff's <u>final</u> opportunity to amend these claims. Should Plaintiff wish to amend the claims, he shall file a Third Amended Complaint ("TAC") by **March 22, 2019**. If no TAC is filed by March 22, 2019, then Defendants shall <u>answer</u> the SAC, as amended by this Order, by **March 29, 2019**.

**IT IS SO ORDERED.**

Dated: March 1, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge