UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| JAMES HUDLOW,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; DEPUTY ANTHONY MEHALIK; DEPUTY CARLOS ESQUER,<br><br>Defendants. | Case No.: 18-cv-2826-CAB-WVG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 26] |
|---|---|

This matter is before the Court on Defendants Deputy Carlos Esquer's and Deputy Anthony Mehalik's motion for summary judgment, or in the alternative, partial summary judgment. [Doc. No. 26.] The Court finds it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendants' motion for summary judgment is granted.

**I.    BACKGROUND**

Plaintiff alleges that on September 25, 2016 at 4:00 a.m., he was walking on Encinitas Boulevard towards his residence when he noticed a vehicle on the other side of the road. [Doc. No. 1, SAC at ¶ 12.[1]] Plaintiff alleges that deputies saw him walking and

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

that he eventually crossed the street. [*Id*. at ¶¶ 13–15.] After walking another quarter of a mile, he was approached by Deputy Esquer and Deputy Mehalik and Plaintiff asked if he could assist them. [*Id*. at ¶¶ 15–16.] Plaintiff claims the deputies grabbed Plaintiff's hands and began asking him questions. [*Id*. at ¶¶ 16–17.] The deputies allegedly asked Plaintiff if they could search him, but he denied their request. [*Id*. at ¶ 17.] He alleges that he immediately told the deputies that he was disabled and could not have his hands placed behind his back. [*Id*. at ¶ 18.] The deputies asked him why he could not perform the task but, as Plaintiff attempted to demonstrate his "limitation" the deputies allegedly grabbed his hands and handcuffed him. [*Id*.] Plaintiff states he immediately began complaining of being in pain because his hands were behind his back, but that the deputies responded by acting more forcibly and they said that "everyone claims to be disabled." [*Id*. at ¶ 19.]

Plaintiff further alleges that the deputies searched him for 45 minutes before determining he had not participated in any criminal activity and then they removed the handcuffs. [*Id*. at ¶¶ 20-21.] Plaintiff claims that when Deputy Mehalik removed the handcuffs, he twisted Plaintiff's hands and pulled both of Plaintiff's shoulders out of the sockets which caused Plaintiff to be in pain. [*Id*. at ¶ 22.] Plaintiff alleges that he was pushed to the ground where Deputy Mehalik continued to pull on his arms. [*Id*. at ¶ 23.] He claims he asked deputies to take him to the hospital, but they declined to do so. [*Id*. at ¶ 24.] Fearful of the deputies, Plaintiff returned to his home as quickly as possible. [*Id*. at ¶ 25.]

On March 1, 2019, the Court granted the Defendants' motion to dismiss Plaintiff's municipal liability and Americans with Disabilities Act claims from the Second Amended Complaint ("SAC") with leave to amend. [Doc. No. 8.] Plaintiff failed to amend the SAC and the only claims remaining are against Defendants Deputy Esquer and Deputy Mehalik for excessive force and unlawful detention pursuant to 42 U.S.C. § 1983. [Doc. No. 1 at 10—12.] On April 24, 2020, Defendants moved for summary judgment, or in the alternative, partial summary judgment. [Doc. No. 26.]

2

18-cv-2826-CAB-WVG

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. However, "the 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.   REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). "[U]nder Fed.R.Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)).

Defendants ask the Court to take judicial notice of a map of the intersection of Encinitas Boulevard and North El Camino Real. [Doc. No. 26-3; Doc. No. 26-2 at 4.] Plaintiff has not opposed and Defendants' request for judicial notice is **GRANTED**.

## IV.   DISCUSSION

Defendants contend that even relying on Plaintiff's recollection of the facts, Plaintiff's claims for unlawful detention and excessive force both fail. Defendants also move the Court for a finding of qualified immunity.

### A. Unlawful Detention and Arrest

Defendants contend the detention was lawful because Deputy Esquer had reasonable suspicion to briefly detain Plaintiff given the surrounding circumstances. Plaintiff argues that Deputy Esquer lacked articulable reasonable suspicion to detain and search Plaintiff, or even to investigate whether Plaintiff was able to care for his own safety.

The Fourth Amendment allows officers to conduct a brief investigatory stop if there is a reasonable, articulable suspicion supporting the action. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "There is no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest." *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002) (internal citations and quotations omitted). Instead, the court must consider whether the detention was reasonable under the Fourth Amendment. *Id*. "This inquiry requires [the court] to consider all the circumstances surrounding the encounter between the individual and the police . . . by evaluating not only how intrusive the stop was, but

also whether the methods used by police were reasonable given the specific circumstances." *Id*. (internal citations, quotations, and brackets omitted). The court considers "the extent to which liberty of movement is curtailed and the type of force or authority employed." *United States v. Torres-Sanchez*, 83 F.3d 1123, 1127 (9th Cir. 1996). However, there is no rigid time limitation on investigative stops. *Sharpe*, 470 U.S. at 685. Instead, when assessing whether a detention is too long to be justified as an investigative stop, a court must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id*. at 686.

"In assessing whether a detention is too long in duration to be justified as an investigative stop" a court must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). The U.S. Supreme Court warned against "unrealistic second-guessing" and stressed that "the fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, itself, render the search unreasonable." *Id*. at 687 (citations, internal quotations, and brackets omitted); *see also Gallegos v. City of Los Angeles*, 308 F.3d 987, 992 (9th Cir. 2002) ("The Fourth Amendment does not mandate one and only one way for police to confirm the identity of a suspect. It requires that the government and its agents act reasonably.") In addition, there is no bright-line time limitation on the permissible length of detentions. *Sharpe*, 470 U.S. at 685.

Considering the totality of the circumstances and the detention as a whole, the Court concludes that the investigatory stop was objectively reasonable. In September 2016, there was a string of commercial burglaries in Encinitas. [Doc. No. 26-4 at ¶ 4.] On the night of the incident, Defendants observed a lone vehicle in a Sprouts' parking lot. [*Id*. at ¶ 6.] Considering it was around two in the morning, all other shops were closed, and in light of the recent burglaries, Defendants found this suspicious. [*Id*.] Deputy Esquer approached the vehicle and spoke to a female driver, who stated she was waiting for someone but would

not answer other questions. [*Id.*] Deputy Esquer suspected the female driver and the unknown companion she was waiting for could be involved in the burglaries. [*Id.*] Deputy Esquer was later directed to Plaintiff walking along Encinitas Boulevard and North El Camino Real. [*Id.* at ¶ 9.] Suspecting that Plaintiff could be the unknown companion the female suspect was waiting for, Deputy Esquer drove to Plaintiff's location and approached him. [*Id.* at ¶¶ 10, 11.] Deputy Esquer observed that Plaintiff appeared intoxicated, was physically fit and taller than him, there was low light, and he was not sure whether Plaintiff was the unknown companion the female suspect had been waiting for. [*Id.*] For safety reasons, Deputy Esquer placed Plaintiff in handcuffs to investigate if Plaintiff was involved with the female suspect and to run a search on his vehicle computer. [*Id.* at ¶ 13.] Deputy Mehalik eventually came and removed Plaintiff's handcuffs after the search and Defendants state the entire interaction lasted roughly ten minutes. [*Id.* at ¶¶ 15, 16.]

Plaintiff disputes the length of the stop and how he was placed in handcuffs. Plaintiff contends Defendants did not have any articulable suspicion for the stop. However, there is nothing in the record to suggest that even under Plaintiff's recollection of the events, the detention was unreasonable. Even if the stop lasted up to an hour, it would not result in a per se unreasonable stop and nothing else in the record suggests that under the circumstances the stop was unlawful. *See United States v. Richards*, 500 F.2d 1025, 1029 (9th Cir. 1974) (holding that an over-hour-long detention was lawful where officers attempted to clarify the situation by calling FAA concerning ownership of an aircraft at issue, and by telephoning other individuals to check on the detained individuals' proffered identifications and explanations); *Gallegos*, 308 F.3d at 992 (holding that a 45-minute to one-hour detention to identify an individual was lawful, despite the fact that the officers did not look at the individual's license and registration, because officers chose another procedure that was "virtually certain" to resolve the situation); *United States v. McCarthy*, 77 F.3d 522, 531 (1st Cir. 1996) (holding that a 75-minute detention was lawful because the "excessive length of [the] detention arose not because the officers engaged in dilatory tactics, but, instead, because their investigative efforts, though reasonable under the

circumstances, failed to dispel the suspicion that gave rise to the stop); *Foley v. Kiely*, 602 F.3d 28, 32–33 (1st Cir. 2010) (holding that an hour-long detention was "not problematic" because the "delay was largely caused by the troopers' attempts to confirm [a] warrant's validity."); *United States v. Maltais*, 403 F.3d 550, 557–58 (8th Cir. 2005) (holding that a 2-hour and 55-minute detention was lawful under the circumstances); *United States v. Salgado*, 761 F.3d 861, 866 (8th Cir. 2014) (holding an hour-long detention was lawful because the length of detention was "attributable to the remote location, not to any lack of diligence or unnecessary delay by law enforcement"). Accordingly, it was reasonable under the circumstances for Defendants to detain Plaintiff and Defendants diligently pursued a means of investigation to dispel their suspicion of Plaintiff.

### B. Excessive Force

When a plaintiff alleges an officer used excessive force in the course of an arrest or seizure, the constitutional right at issue is the Fourth Amendment right to be free from "unreasonable seizures." U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the *nature and quality of the intrusion* of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations and internal quotation marks omitted) (emphasis added). Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions are objectively reasonable considering the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396. These factors are not exclusive, and a court must examine the totality of circumstances. *Coles v. Eagle*, 704 F.3d

624, 628 (9th Cir. 2012).

"Force is excessive when it is greater than reasonable under the circumstances," *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002), and "the reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because [the excessive force] inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotation marks and citation omitted); *see also Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994) ("[W]hether a particular use of force was reasonable is rarely determinable as a matter of law."). Nevertheless, defendant officers "can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Liston*, 120 F.3d at 976 n.10 (citation omitted).

### 1. Nature of Intrusion

The Court first considers "the nature and quality" of the intrusion on Plaintiff's rights. *Coles*, 704 F.3d at 628. "The gravity of the particular intrusion that a given use of force imposes upon an individual's liberty interest is measured with reference to 'the type and amount of force inflicted.'" *Young v. Cty. of L.A.*, 655 F.3d 1156, 1161 (9th Cir. 2011) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001)).

Plaintiff's excessive force claim involves both the act of handcuffing Plaintiff and the removal of the handcuffs. The Court concludes that Plaintiff has not established a prima facie case of a Fourth Amendment intrusion for purposes of the instant summary judgment motion, where the evidence in the record establishes that Defendants employed a level of force that is "low on the continuum of tactics available to police officers." *Donovan v. Phillips*, No. 3:14-cv-00680-CRB, 2015 WL 993324, at *5 (N.D. Cal. Mar. 4, 2015).

"The use of handcuffs during an arrest is quite common and often a 'standard

practice'" and, "[o]rdinarily, the use of handcuffs during an arrest is a very low quantum of force that will not constitute excessive force." *McFarland v. City of Clovis*, No. 1:15-cv-01530-AWI-SMS, 2017 WL 1348934, at *13 (E.D. Cal. Apr. 10, 2017) (citing *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002)); *see also Simon v. McMahon*, 2019 WL 3059581, *7 (C.D. Cal. May 1, 2019) ("Simple handcuffing is not, by itself, excessive force.") (quoting *Hoffman v. City of Los Angeles*, No. CV 15-03724-FMO (ASx), 2016 WL 4698939, at *7 (C.D. Cal. Jan. 5, 2016)), *report and recommendation adopted* 2019 WL 3059499 (C.D. Cal. June 14, 2019); *Dillman v. Tuolumne County*, No. 1:13-CV-00404 LJO SKO, 2013 WL 1907379, at *7 (E.D. Cal. May 7, 2013) ("The mere application of handcuffs during the course of an arrest does not, in and of itself, give rise to a section 1983 claim for excessive force" because "[t]he right to make an arrest carries with it the right to use 'some degree of physical coercion.'") (and cases cited therein). Nevertheless, the manner in which an individual is handcuffed may, under some circumstances, amount to excessive force. *See Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("It is well-established that overly tight handcuffing can constitute excessive force."). In evaluating the amount of force used, courts may consider the severity of injuries. *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018). Likewise, courts "may infer from the minor nature of a plaintiff's injuries that the force applied was minimal." *Id*. ("While injuries are not a precondition to section 1983 liability, their absence can suggest a lesser degree of force when that force is of the type likely to cause injuries.").

Defendants contend that the initial handcuffing of Plaintiff was objectively reasonable and that the record fails to support Plaintiff's allegation regarding the force used to remove the handcuffs. Plaintiff counters that a reasonable jury could find that Defendants' use of handcuffs and manipulation of Plaintiff's arms behind his back could constitute unreasonable or excessive force.

Plaintiff told Defendants he was disabled and could not put his arms behind his back. [Doc. No. 28 at 11.] Defendants then asked how far he could put his arms back and handcuffed Plaintiff. [*Id*.] Defendants placed Plaintiff on a curb, but after Plaintiff asked

if he could sit somewhere else or stand instead Defendants moved Plaintiff to sit on a ledge that was higher up. [*Id*. at 12.] Plaintiff contends he was there for about thirty minutes until they proceeded to take the handcuffs off. [*Id*.] Plaintiff testified that while he was still sitting down, his arms were raised above his head and tore both of his shoulders out of socket. [*Id*.] The act of removing the handcuffs took roughly another thirty minutes as Plaintiff continued to complain of pain. [*Id*.]

Deputy Esquer states that Plaintiff did not say he had trouble putting his hands behind his back or complain of any other injury, and that Plaintiff placed his hands behind his back to be handcuffed at his request. [Doc. No. 26-4, ¶ 11.] Deputy Esquer checked the handcuffs for tightness and double locked them to prevent tightening. [*Id*. at ¶ 12.] Once Deputy Mehalik arrived Deputy Esquer asked him to stay with Plaintiff as he went to run Plaintiff's information on his vehicle computer. [*Id*. at ¶ 13.] After speaking for a few minutes, Plaintiff complained his shoulders were hurting due to a prior injury and Deputy Mehalik directed Plaintiff to sit on a nearby retaining wall. [Doc. No. 26-5, ¶ 11.] After Deputy Esquer finished his investigation and took pictures, Deputy Mehalik removed the handcuffs, which he states took him a total of five to eight seconds to remove. [*Id*. at ¶ 13.] Both Defendants recall Plaintiff thanking them, and Deputy Esquer states the entire interaction lasted about ten minutes. [Doc. No. 26-4, ¶¶ 15-16.] Defendants attached the Computer Aided Dispatch ("CAD") Report in further support of their timeline and the pictures that Deputy Esquer took at the time of the incident. [Doc. No. 26-2 at 12; 63—65.] The CAD report comports with the Defendants' timeline of roughly ten minutes of total interaction. The pictures show Plaintiff shirtless sitting on a ledge with his arms behind his back, but it is not readily apparent whether or not he was experiencing any pain or discomfort at the time the pictures were taken.

Plaintiff has not proffered any substantial medical evidence to support his own testimony or the vague testimony of his friends that the incident caused him any injury or pain. Plaintiff offers no medical records but instead relies on two pages of deposition testimony from a physician, Dr. Susan Glockner, on her recollection of Plaintiff's visits

which would last around 10 minutes. [Doc. No. 28 at 77.] Dr. Glockner states that Plaintiff's injuries, consistent with the description he gave her for how they occurred, could have resulted in a labral tear. [*Id*. at 78.] However, she also states that the description Plaintiff gave her about his injuries involved the use of the word "straight jacket." [*Id*. at 77.] There is nothing in the record that supports Defendants placed Plaintiff in a way similar to being held in a straitjacket. Moreover, the Court notes that it is not clear from the excerpts Plaintiff provided of Dr. Glockner's deposition whether she was functioning as his treating physician at the time which would limit what Dr. Glockner would be able to testify to. As there is no expert report provided from Dr. Glockner the scope of her testimony is limited to information learned from and opinions developed during actual treatment and may not offer forward-looking speculation, or any other conclusion reached with the benefit of hindsight.[2]

Defendants contend that any injuries Plaintiff claims were pre-existing and could not have been caused by the incident. In support, Defendants offer the expert report of Dr. Robert Eastlack who performed a medical examination of Plaintiff. [Doc. No. 26-2 at 67—85.] Dr. Eastlack states that Plaintiff's "particular recounting of the incident is extremely unlikely, and bordering on the impossible." [*Id*. at 83.] Further, Dr. Eastlack states, "It would be reasonable to conclude that [Plaintiff's] preexisting disease within the shoulders may have incurred an irritation or a flareup during the handcuffing episode by the police, but no new injury would likely have occurred." [*Id*. at 84.] Based on the record before the Court, Plaintiff has failed to rebut the Defendants' contention that the handcuffing caused any injury to Plaintiff. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding plaintiff's "claim of injury is equally unsupported as she does not provide any medical records to support her claim that she suffered injury as a result of [the

---

[2] The Ninth Circuit has held that "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011).

officers' use of force]"); *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) ("We do not believe that [Plaintiff's] allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support his claim of excessive force.").

### 2. Governmental Interests at Stake

Under *Graham v. Connor*, the Court evaluates the government's interest in the use of force by examining three core factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396; *see also Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001); *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). These factors are not exclusive and are "simply a means by which to determine objectively 'the amount of force that is necessary in a particular situation.'" *Deorle*, 272 F.3d at 1280 (quoting *Graham*, 490 U.S. at 396-97). In other words, the Court examines the totality of the circumstances and considers "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994). For example, in some cases the Court may find it necessary to consider the availability of alternative methods of capturing or subduing a suspect. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). Although officers need not employ the least intrusive degree of force possible, they must consider less intrusive methods of effecting an arrest, and the presence of feasible alternatives factors into the *Graham* analysis. *Bryan*, 630 F.3d at 831.

Defendants do not suggest that Plaintiff attempted to flee or resist arrest. In fact, the record suggests Plaintiff was respectful of the deputies throughout the interaction. However, Deputy Esquer states that due to being alone before Deputy Mehalik's arrival, the time of day, Plaintiff's appearance of being strong and fit, and Plaintiff possibly being intoxicated, Deputy Esquer felt it was necessary to handcuff Plaintiff for officer safety. In light of these circumstances, the Court finds this minimal level of force was objectively reasonable.

### 3. Balancing the Interests

Ultimately, the Court must balance the severity of the intrusion with the government's interest. Here, the force used against Plaintiff in this case was minimal and the officers had a significant interest in protecting themselves and the public. Construing the facts in the light most favorable to Plaintiff, there is no triable issue: Defendants' use of force was objectively reasonable under the circumstances and did not violate the Fourth Amendment.

### C. Search and Seizure

The parties disagree on whether Plaintiff made a valid unreasonable search and seizure claim. The caption of Plaintiff's complaint labels claim one as unlawful detention and arrest and labels claim two as excessive force. Within the complaint itself, Plaintiff's first claim for relief is labeled "Unreasonable Search and Seizure – Excessive Force." [Doc. No. 1 at 10.] Defendants argue in their reply that Plaintiff failed to plead an unlawful search claim. The Court agrees. Federal Rule of Civil Procedure 10 requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]" Fed. R. Civ. P. 10(b). "Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000) (citation omitted). "Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation." *Id*. at 840-41. "In such cases, separate counts permit pleadings to serve their intended purpose to frame the issue and provide the basis for informed pretrial proceedings." *Id*. at 841. "'Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.'" *Id*. (citations omitted). Accordingly, Plaintiff failed to plead a valid

unlawful search claim.

Nevertheless, Plaintiff's unlawful search allegation amounts to Plaintiff telling the Defendants he did not consent to a search and Defendants searching his person anyway. As discussed previously, Deputy Esquer stated that at the time of the incident, he was investigating any connection Plaintiff might have had to the female suspect and the commercial robberies, was evaluating whether Plaintiff posed a significant danger to himself or others, and Plaintiff appeared physically stronger than him. Under these circumstances, it was not unreasonable for an officer to conduct a brief pat-down of Plaintiff during the investigatory stop. *Sialoi v. City of San Diego*, 823 F.3d 1223, 1236 (9th Cir. 2016) (internal quotation marks omitted) (quoting *United States v. I.E.V.*, 705 F.3d 430, 434 (9th Cir. 2012) ("Incident to a valid investigatory stop, an officer may, consistent with the Fourth Amendment, conduct a brief pat-down (or frisk) of an individual when the officer reasonably believes that the persons with whom he is dealing may be armed and presently dangerous.")). "This interest in the safety of the officers and others nearby is the 'sole justification' for a Terry frisk." *Id.* (quoting *I.E.V.*, 705 F.3d at 435). Accordingly, it was objectively reasonable under the circumstances for a brief pat-down in the interest of the safety of the officers and others nearby.

### D. Qualified Immunity

Even if the Court were to conclude a reasonable jury could find that Defendants unlawfully detained Plaintiff or used excessive force, Defendants would nonetheless be entitled to qualified immunity. "Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Castro v. City of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc*)* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Because "[i]t is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a

case is erroneously permitted to go to trial.'" *Id*. (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in original). To that end, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). To determine whether Deputies Mehalik and Esquer are immune from suit, the Court must consider "whether [their] conduct violated a constitutional right, and if so, whether that right was clearly established at the time of the event in question." *Mueller*, 576 F.3d at 993 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

"[T]he plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). "[C]learly established law should not be defined at a high level of generality." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (internal quotation marks and citation omitted). To the contrary, "the clearly established law must be 'particularized' to the facts of the case." *Id*. Although there need not be "a case directly on point, [] existing precedent must have placed the statutory or constitutional question beyond debate." *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.").

The question here then is whether, at the time of the incident in September 2016, the law was clearly established that officers could not use minor force under the circumstances after drawing all reasonable inferences in Plaintiff's favor. The Court concludes that it was not. Plaintiff has failed to meet his burden of "identify[ing] a case where an officer acting under similar circumstances as [Esquer and Mehalik] was held to have violated the Fourth Amendment." *Sharp*, 871 F.3d at 911 ("Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful.") (emphasis in original). Nor has the Court located any authority that would have alerted Deputy Esquer and Mehalik that the degree of force they

used, in the specific situation they confronted, was excessive under the Fourth Amendment. To the contrary, the Ninth Circuit has found far more aggressive police conduct to be objectively reasonable, even where the conduct resulted in serious physical injury. *See, e.g., Tatum*, 441 F.3d at 1097 (finding the officer's use of a control hold to force a suspect to the ground on his stomach was objectively reasonable); *Jackson v. City of Bremerton*, 268 F.3d 646, 652–53 (9th Cir. 2001) (applying *Graham* and concluding that spraying plaintiff's hair with a chemical irritant prior to her arrest, pushing her to the ground to handcuff her, roughly pulling her to her feet during her arrest, and forcing her to sit in the patrol car with the windows up in the July heat was not excessive force).  Accordingly, the Court finds that Defendants' minimal use of force under the circumstances did not violate clearly established law and they are therefore entitled to qualified immunity.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [Doc. No. 26] is **GRANTED**.  The parties' joint motion to vacate or continue pretrial deadlines [Doc. No. 31] is therefore **DENIED as moot**.

Dated:  June 3, 2020

Hon. Cathy Ann Bencivengo
United States District Judge